UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                   Case No. 23-CR-69

JAIDEN A. HENNING,

        Defendant.

---

## UNITED STATES' SUR-REPLY TO DEFENDANT'S REPLY FOR PRETRIAL RELEASE

---

        The United States of America, by and through its attorneys Gregory J. Haanstad, United States Attorney, and Katherine M. Halopka-Ivery, Assistant United States Attorney, hereby provide the following sur-reply to the defendant's reply to vacate Magistrate Judge Nancy Joseph's detention order.

        The United States filed a lengthy response to the defendant's motion to review Magistrate Judge Nancy Joseph's detention order.  See ECF No. 78  The defendant filed a reply alleging lack of evidence to support certain assertions the United States provided in its response.  See ECF No. 91.  The defendant also outlines the positive family support and employment that would assist in protecting the community if the defendant was released.  Id.  On June 1, 2023, the Court allowed the United States to submit a sur-reply.  See ECF No. 92.

        The defendant's detention should be continued, because the United States has demonstrated by clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community.

## II. Argument

The ultimate question is whether any combination of conditions will reasonably assure the safety of the community, should the defendant be released. *See* 18 U.S.C. § 3142, *et seq*. That answer is no. The United States previously outlined all the appropriate factors including the presumption, which supports that no such conditions exist. *See* 18 U.S.C. §§ 3142(e)(3)(A) and 3142(g). The United States now provides supplemental information, based on the defendant's reply, which only further supports detention.

### 1. Nature and Circumstances of the Offense

The defendant alludes that since the defendant's conduct is limited in the Affidavit supporting the Criminal Complaint for three of his co-defendants that his conduct is not as serious as outlined by the United States. See ECF No. 91, page 2. However, as the Affidavit stated, the "affidavit is intended to show merely that there is sufficient probable cause for the requested legal process and does not set forth all of [the affiant's] knowledge about this matter." ECF No. 2, page 6. Therefore, the fact the affidavit only outlined limited information regarding the defendant's ongoing firearm and machinegun trafficking, does not mean the defendant was not engaged in drug trafficking and additional criminal conduct. Instead, the proffer as previously outlined in the United States' response demonstrates how the nature and circumstances of the instant offenses are aggravated and favor detention.

### 2. Weight of the Evidence

The weight of the evidence in this case also favors detention regardless of the defendant's baseless allegations the United States does not have any photographs or evidence from the defendant's own phone or social media that shows drugs, drug paraphernalia, or drug dealing. The

truth is, there is substantial evidence that supports the defendant's ongoing drug and firearm trafficking as previously outlined in the United States' response. However, there is additionally evidence, including the defendant's own words, photographs, and other items from the defendant's phone and social media, which support that he actively engaged in drug and firearms trafficking and the manufacturing of machineguns up until his arrest. Also, there is overwhelming evidence of the defendant's intentions for and use of his 3D printer. The United States will not flood this reply with the numerous messages and photos, but instead provide just a few examples.

Figure 1 shows one of many messages shared between the defendant and co-conspirator Meriwether discussing the sale of firearms. Meriwether warns the defendant to "say less" consistent with them engaging in illegal conduct. Also, Figure 2 shows a firearm (among the many located on his social media) the defendant would sell to Meriwether from September 25, 2022.

```
Author  ionwanna.kickit (Instagram: 983608500)
Sent    2022-09-12 13:42:09 UTC
Body    ima send u everything I get in all yo numbers gone be blessed

Author  thereal_chefdon92 (Instagram: 53464415397)
Sent    2022-09-12 13:42:22 UTC
Body    Say less

Author  thereal_chefdon92 (Instagram: 53464415397)
Sent    2022-09-12 13:42:48 UTC
Body    Even if u got more shit today and tomorrow lmk cause he gone be
        in town today

Author  ionwanna.kickit (Instagram: 983608500)
Sent    2022-09-12 13:43:29 UTC
Body    I might go grab this G19 gen 3
```



(Figure 1)            (Figure 2)

Also, in his conversations with Meriwether, the defendant discussed how he has "g" but needs "b." As previously described in the United States' response, "g" is street code for cocaine and "b" is street code for heroin. The defendant admitted to this drug and firearm conduct in his Mirandized statement. This evidence supports the defendant was engaged in drug trafficking with

3

the armed drug trafficking organization (ADTO), especially since the defendant did not admit to being a heroin or cocaine user in his bond study.

```
Author  thereal_chefdon92 (Instagram: 53464415397)
  Sent  2022-09-28 15:22:24 UTC
  Body  I can give u some grits

Author  ionwanna.kickit (Instagram: 983608500)
  Sent  2022-09-28 15:24:55 UTC
  Body  How much

Author  ionwanna.kickit (Instagram: 983608500)
  Sent  2022-09-28 15:25:17 UTC
  Body  I need b I got g
```

(Figure 3)

The defendant's cellphone is further filled with communications of drug and firearm trafficking, including the manufacturing and selling of machineguns. With these communications there are more photos of the defendant with multiple firearms including Figure 4 from March 10, 2023, and Figure 5 from April 19, 2023.

 

(Figure 4)　　　　　　　　　　　　(Figure 5)

The evidence from his phone demonstrated, unlike the defendant assertions, he was not legal possessing firearms to simply possess them, but instead possessed firearms to illegally sell the firearms to make money. The evidence further supports that the defendant was planning to

4

manufacture firearms. Case agents located multiple photos which display the assembly of privately made firearms created by a 3D printer (Figure 6) and photos of items needed to use a 3D printer with a privately (3D) made firearm (Figure 7 from March 29, 2023). The defendant also had a screen shot on March 29, 2023, of an article regarding the 3D printer abilities to print a firearms frame for $300 that could fire upwards of 1000 rounds of ammunition (Figure 8).



(Figure 6)          (Figure 7)          (Figure 8)

In addition to the information of 3D printed firearm frames, also located on the defendant's cellphone was numerous Glock-auto sear devices. Contrary to the defendant's claim in his response, these devices are used to convert semi-automatic firearms into automatic firearms (machineguns). Figures 9, 10, 11 from April 21, 2023, demonstrates that by the information in the metadata (sear) and a photo of how it is installed. This is further support based on the many messages of the defendant discussing converting firearms to machineguns.



(Figure 9)            (Figure 10)            (Figure 11)

In a conversation on April 7, 2023, the defendant discussed printing "buttons" (machineguns). The defendant stated, "I got the file for glizzy ar and drac them bitches cheap n you can print like 7 at a time." Below is another conversation, were the defendant discussed the sale of firearms and "buttons." (Figure 12 from April 19, 2023).



(Figure 12)

Besides the conversations and photos, the defendant had a web history and web search history consistent with him engaged in manufacturing machineguns. Here are just some examples:

On April 10, 2023 "Best 3D printed Glocks."  On April 14, 2023 "Glock autosear" and "sear +g updated stl version."  On April 14, 2023"Make Glocks Full Auto' Glock autosear."  On April 17, 2023 "PY2A Parts 3D Printed Glock Frame JSD Supply."

Case agents located messages regarding the sale of controlled substances also on the defendant's phone.  There were multiple people contacting the defendant for "za" (marijuana) and "fire" (heroin).  For example, on February 10, 2023, the defendant discussed the sale of "za" (marijuana) and "fire" (heroin) with an unknown individual.  On March 19, 2023, the defendant communicated with "bigcrisdummy@gmail.com" regarding getting "za" and "fire."  The defendant told his buyer that "I got you" and also to "Sayless im finna be otw im leaving 19."  Also located on the defendant's phone was photos of controlled substance, like Figure 13 from March 21, 2023.



(Figure 13)

Therefore, the evidence against the defendant is not unsubstantiated hyperbolizes, but facts mostly supported by the defendant's own words and actions.

This factor weighs in favor of detention.

### 3. History and Characteristics of the Defendant

The defendant's history and characteristics still support detention. As previously outlined the defendant has been a drug and firearm trafficker for a long period of time and was not stopping. The defendant alleges the lack of knowledge about Meriwether's arrest and other ADTO members, but his cell phone web search history demonstrates he was on notice yet continued to engage in his criminal conduct. On April 12, 2023, he searched "Indiana man silver Toyota highspeed chase" which is consistent with Meriwether's arrest. He also searched "azjuan Meriwether." While still engaging in his illegal conduct, the defendant also searched, "how many misdemeanors equal a felony in wi." Regardless of his awareness, as his messages previously outlined affirm, the defendant did not stop his dangerous and illegal conduct until his arrest.

Further, as to the police contact in October 2022, the defendant had contact with law enforcement and during this time, he was engaged in his drug trafficking and firearms. The contact had to do with the fact that his friend stole a firearm magazine. Even with the police contact, the defendant did not stop. Additionally, the defendant points to the lack of information regarding the fleeing incident in November 2022. Case agents are not sure what police department was involved with the fleeing incident. Milwaukee Police Department was involved in three fleeing incidents that day, but it is unclear if the incidents are related to this defendant. Regardless, the defendant's own statements confirm he was involved in a fleeing incident.

The defendant committed these offenses and planned to continue to do so. The defendant's supportive family, specifically his father's side of the family, did not prevent his actions. In fact, the defendant has used his family in the past to engage in his criminal conduct. As described in the United States' response, the defendant's dad purchased one of the firearms sold to Meriwether.

See ECF 78. The defendant is willing to use his family and his family's firearms, to engage in his illegal behaviors. Also, the items used to conduct his illegal enterprise were located at his father's family residences on 55th, not just his mother's residence on 50th Street. Specifically, the 3D printer, a Glock 27, ammunition, controlled substances, additional magazine with loose ammunition and other firearms accessories, and tools used to install switches on firearms. Further, as clearly outlined above, these items were not just a harmless printer or tools for the average person, but items used in by the defendant for his criminal trade. The defendant's family has not and will not help protective the community from the defendant.

The defendant now alleges a long work history. The United States has not been able to confirm this information; however, his conduct and messages indicated that regardless of his employment he was engaged in drug and firearm trafficking. Further, at least one message on his cellphone from March 7, 2023, indicated the defendant conducted one of his drug transactions at his job. Employment will not assist in protecting the community from the defendant.

The evidence supports that the defendant engaged in drug and firearm trafficking for a long period of time, and demonstrates he engaged in his illegal conduct until his arrest with no signs of stopping. The defendant conducted his illegal businesses, the whole time he had a supportive family and employment. None of that stopped him.

Therefore, this factor favors detention.

4. **Nature and Seriousness of the Danger to Individuals and the Community**

The defendant poses an acute risk of endangering the public through continued drug trafficking, fleeing conduct and his engagement with flooding the Milwaukee community with illegal firearms, including to those individuals engaged in drug trafficking. Through his own social

9

media and telephone evidence, he has demonstrated the risk of danger he possesses if released to the community. Defendant was aware of co-conspirators consequences and his own possible consequences but remained undeterred. With employment and a supportive family, he was not deterred. Rather, the defendant used them and their residences to further his illegal businesses. The defendant's conduct and history demonstrate the risk of danger he poses to the community.

This final factor weighs in favor of detention also.

## Conclusion

The United States respectfully requests that the Court deny the defendant's motion for the pretrial release of the defendant and affirm Magistrate Judge Joseph's detention order.

Respectfully submitted this 5th day of June 2023.

                                    GREGORY J. HAANSTAD
                                    United States Attorney

By:    *s/ Katherine M. Halopka-Ivery*
        Katherine M. Halopka-Ivery (WBN Bar No. 1075311)
        Assistant United States Attorney
        Office of the United States Attorney
        Eastern District of Wisconsin
        517 East Wisconsin Avenue, Room 530
        Milwaukee, Wisconsin 53202
        Telephone: (414) 297-1700